# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

SORIN LAZAR,

                                            Plaintiff,

        -against-

THE CITY OF NEW YORK,
P.O. JASMINE NUNEZRAMOS, in her Official and
individual capacity, CYRIS JEWELS, in her Official
capacity as a Board Member of the Aurora
Condominium and in her individual capacity,
and THE AURORA CONDOMINIUM,

                                      Defendants.

--------------------------------------------------------------------x

DOCKET NO. 1:21-cv-01748


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' CYRIS JEWELS, IN HER OFFICIAL CAPACITY AS A BOARD MEMBER OF THE AURORA CONDOMINIUM AND IN HER INDIVIDUAL CAPACITY AND THE AURORA CONDOMINIUM MOTION TO DISMISS**

THE LAW OFFICES OF
RICHARD ST. PAUL, ESQ., PLLC
Richard St. Paul, Esq.
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
Telephone: (914) 517-7568
Facsimile: (914) 517-7569

*Attorneys for Plaintiff*
*Sorin Lazar*

**Table of Authorities**

2020 NY Slip Op 32480(U) (Sup. Ct. N.Y. Cty. June 3, 2020) ............................................................... 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)(2009) ............................................................................................................ 4-5

*DeLuca v. AccessIT Grp., Inc.*,
    695 F. Supp. 2d 54 (S.D.N.Y. 2010) .............................................................................................. 6

Federal Rule of Civil Procedure 8 ............................................................................................................ 4

Federal Rule of Civil Procedure 15 ........................................................................................................ 16

*Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2d Cir. 2016) ........................................................................................................... 6

*Monahan v. New York Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000) ......................................................................................................... 16

*P. A. v. City of N.Y.*,
    44 F. Supp. 3d 287 (E.D.N.Y. 2014) ...................................................................................... 13, 14

*Pinckney v. Carroll*,
    2019 U.S. Dist. LEXIS 209835 (S.D.N.Y. Dec. 4, 2019) ............................................................. 5

*Pinckney*,
    2019 U.S. Dist. LEXIS 209835 at *15 ........................................................................................... 5

*Reaves v. New York City Dep't of Educ.*,
    2020 N.Y. Misc. LEXIS 3626 *14 ............................................................................................... 15

Rule 8 ................................................................................................................................................. 5, 5

Rule 12 ..................................................................................................................................................... 5

Rule 201 ................................................................................................................................................... 6

*Schubert v. City of Rye*,
    775 F. Supp. 2d 689 (S.D.N.Y. 2011) ........................................................................................... 6

Section 1 .................................................................................................................................................. 9

Section 3 ............................................................................................................................................. 9, 10

section 1983 ........................................................................................... 3, 6, 7, 8, 9, 11, 12, 13

*Tull v. New York City Hous. Auth.*,
    2018 U.S. App. LEXIS 3372 ** 2, 2018 WL 862298 (2d Cir. 2018) ............................................ 5

*Tull*,
    2018 U.S. App. LEXIS 3372 at ** ................................................................................................. 5

*Watson*,
    2010 U.S. Dist. LEXIS 103473, 2010 WL 3835047 ............................................................ 8, 11, 12

*Weiss Inc. v. Village of Sag Harbor*,
   762 F. Supp. 2d 560 (E.D.N.Y. 2011) ................................................................................ 6

Plaintiff Sorin Lazar submits this Memorandum of Law in opposition to Defendants Cyris Jewels and The Aurora Condominium (collectively "Aurora Defendants") Motion to Dismiss the Second Amended Complaint ("SAC").

## PRELIMINARY STATEMENT

In their Memorandum of Law in Support of their Motion to Dismiss the SAC ("Defendants Brief"), the Aurora Defendants make several contentions as to why the SAC should be dismissed. As discussed below, each of these arguments is without merit.

The SAC alleges a valid section 1983 claim against the Aurora Defendants.  The SAC shows that the Aurora Defendants withheld exculpatory evidence and facts that would have exonerated Plaintiff, including, but not limited to, that in 2017 the Aurora Board of Managers approved Plaintiff's request to store his personal effects in an unused storage room, and the "Superintendent/Porter License Agreement" executed between Plaintiff and the Aurora Condominium, which provides that Plaintiff had 14 calendar days to remove his personal items after being terminated, which was exactly what he did here.  These facts and exculpatory evidence would have exonerated Plaintiff and prevented him from being falsely and illegally arrested for simply taking his own personal items out of his assigned storage space upon moving out of the Aurora Condominium.  In addition, joint action between the Aurora Defendants and Defendants the City of New York and Officer Jasmine Nunezramos ("City Defendants") is evidenced from the parties' joint review of a video tape that shows Plaintiff lawfully and properly removing his personal effects from the storage unit that was assigned to him

Contrary to the Aurora Defendants contention, the SAC alleges a valid negligence claim. These defendants wrongly contend that no duty of care is alleged.  The basis for the negligence

claims here comes from the fact that the Aurora Defendants had a duty of care to ensure that they followed their proffered and promised policies and procedures, namely the Board of Managers 2017 approval for Plaintiff to store his personal effects in an unused storage unit.   The Aurora Defendants breached this duty of care by, <u>inter alia</u>; failing to adhere and enforce its agreed to policies, procedures, rules and regulations; failing to address, confront, prevent and protect Plaintiff from being falsely and wrongfully arrested on account of Defendant Jewels' false police report; and allowing Defendant Jewels to file a false police report when it knew that Plaintiff had been assigned the storage space at issue and was removing his personal effects so he could leave the premises by the end of February 2020.

As shown below, the SAC' also alleges a valid negligent infliction of emotional distress ("NIED") claim under the direct duty and social circumstances theories.  The SAC also sufficiently alleges that the Aurora Defendants committed extreme and outrageous conduct to warrant both NIED and intentional infliction of emotional distress ("IIED") claims.

Thus, the Court should deny the Aurora Defendants motion to dismiss the SAC in its entirety.

## <u>BACKGROUND</u>

For a full recitation of the facts, the Court is respectfully referred to Plaintiff's Second Amended Complaint ("SAC") filed on October 15, 2021.  (<u>See</u> Docket. # 26.)

## <u>ARGUMENT</u>

### A.   <u>The Legal Standard</u>

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must comprise a "short and plain statement of the claim showing that the pleader is entitled to relief."  <u>Ashcroft v. Iqbal</u>,

556 U.S. 662, 677-78 (2009).  The Rule 8 pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  Id.  A complaint which proffers "labels and conclusions . . . [or] . . . a formulaic recitation of the elements of a cause of action will not do." Id.  Furthermore, a pleading will not meet the Rule 8 standard if merely contains "naked assertions" lacking any "further factual enhancement."  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

In deciding a motion to dismiss, the Court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  Tull v. New York City Hous. Auth., 2018 U.S. App. LEXIS 3372 ** 2, 2018 WL 862298 (2d Cir. 2018) (citing Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 108 (2d Cir. 2010)).  A complaint may survive a Rule 12(b)(6) motion to dismiss if it pleads "enough facts to state a claim to relief that is plausible on its face." Tull, 2018 U.S. App. LEXIS 3372 at ** 2 (quoting Bell, 550 U.S. at 570).  "A complaint 'does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.'" Pinckney v. Carroll, 2019 U.S. Dist. LEXIS 209835, *15 (S.D.N.Y. Dec. 4, 2019) (quoting Keiler v. Harlequin Enters., Ltd., 751 F.3d 64, 70 (2d Cir. 2014)). "At the motion to dismiss stage, a 'complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.'" Pinckney, 2019 U.S. Dist. LEXIS 209835 at *15 (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980) (discussing Conley v. Gibson, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957))).

When deciding a motion to dismiss, a court is entitled to consider: (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral

6

to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. See Weiss Inc. v. Village of Sag Harbor, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotation[s] from the document is not enough." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (alteration in original) (citation and internal quotation marks omitted). When a court takes judicial notice of a document on a motion to dismiss, it should generally do so only "to determine what statements [the documents] contain [ ] . . . not for the truth of the matters asserted." Schubert v. City of Rye, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (alterations in original) (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)).

Against this standard, the Court should deny Defendants' motion to dismiss in its entirety.

**B.** **The SAC's Section 1983 Claim Against the Aurora Defendants is Sufficiently Pled**

"[A] plaintiff may maintain a § 1983 claim against a private actor if the plaintiff sufficiently alleges that the private actor 'is a willful participant in joint action with the State or its agents.'" Lienau v. Garcia, No. 12-CV-6572 (ER), 2013 U.S Dist. LEXIS 178415, *14 (S.D.N.Y. Dec. 19, 2013) (quoting Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980)

7

("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.") (citation omitted). "The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the police." Lienau, 2013 U.S. Dist. LEXIS at * 14 (quoting Forbes v. City of New York, No. 05 Civ. 7331 (NRB), 2008 U.S. Dist. LEXIS 63021, 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (citing Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 272 (2d Cir. 1999))). "To establish joint action, a plaintiff must show 'that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law.'" Id. at *14-15 (quoting Bang v. Utopia Rest., 923 F. Supp. 46, 49 (S.D.N.Y. 1996)). "The Supreme Court has also explained joint action through the concept of a 'meeting of the minds' between law enforcement and private individuals." Id. at * 15 (quoting Forbes, 2008 U.S. Dist. LEXIS 63021, 2008 WL 3539936, at *5 (citing Adickes v. Kress & Co., 398 U.S. 144, 158, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970))).

"Moreover, to state a plausible § 1983 claim against a private individual, '[c]onclusory allegations that [the] private individual conspired or took concerted action with state actors will not suffice.'" Id. (quoting Watson v. Grady, No. 09 Civ. 3055 (KMK), 2010 U.S. Dist. LEXIS 103473, 2010 WL 3835047, at *8 (S.D.N.Y. Sept. 30, 2010) (citations omitted)). "Rather, a plaintiff must allege 'a sufficiently close nexus between the State and the challenged action of the private party so that the action of the latter may be fairly treated as that of the State itself, or that the private actor was jointly engaged with state officials in a conspiracy to deprive the plaintiff of his constitutional rights.'" Id. at *15 -16 (quoting Watson, 2010 WL 3835047 at *8 (internal quotation marks and brackets omitted) (quoting Bhatia v. Yale Sch. of Med., 347 F. App'x 663,

664-65 (2d Cir. 2009)  (summary order)); accord Johnson v. City of New York, 669 F. Supp. 2d 444, 450-51 (S.D.N.Y. 2009) ("[A] plaintiff must allege that the private entity and state actors carried out a deliberate, previously agreed upon plan, or that their activity constituted a conspiracy or meeting of the minds.") (internal quotation marks, brackets and citations omitted).

Notably, a complaint will sufficiently allege joint action to warrant a section 1983 claim against a private defendant where the defendant withholds and ignores exculpatory evidence, as well as ignores facts that would exonerate the plaintiff.  Lienau, 2013 U.S. Dist. LEXIS at * 22-24 (citing Anilao v. Spota, 774 F. Supp. 2d 457, 500-02 (E.D.N.Y. 2011); Watson, 2010 U.S. Dist. LEXIS 103473, 2010 WL 3835047, at *8)).

The Aurora Defendants contend that the SAC fails to allege a section 1983 claim against them.  (Defendants' Brief pp. 7-13.)  Specifically, the Aurora Defendants assert that the SAC lacks any facts to show that they improperly influenced, controlled, planned or conspired with the City Defendants.  (See Defendants Brief pp. 11-13.)  As detailed below, this proffered argument misreads and misrepresents the SAC, which contains sufficient allegations to warrant a section 1983 claim against the Aurora Defendants.

The SAC alleges that the Aurora Defendants ignored and withheld exculpatory evidence that would have exonerated Plaintiff.  (SAC ¶¶ 12-22, 35.)  The Aurora Defendants ignored the "Superintendent/Porter License Agreement" (the "Agreement") executed by Plaintiff and the Aurora Condominium, the 2017 Board of Managers approval that allowed Plaintiff to store his personal effects in a unused storage room, and an email to Plaintiff from Shpresa Nela on February 28, 2020.  (Id.)  All of this evidence and information would have exonerated Plaintiff from being

charged.  Instead, the Aurora Defendants withheld this exculpatory evidence and all of their knowledge and information about the Agreement and Plaintiff's use of the storage space.

Specifically, in or about January 2013, Plaintiff was hired to be the superintendent of the Aurora Condominium.  (SAC ¶ 12.)  Plaintiff and the Aurora Condominium then entered into the Agreement, dated February 1, 2013.  (Id.)  Section 1 of the Agreement states, *inter alia*, that "Super/Porter expressly acknowledges that Apartment 2F (the "Designated Superintendent Apartment") in the Building, the apartment that has been designated for occupancy by Super/Porter.  (Id.)  Super/Porter will take possession of the Designated Superintendent Apartment in accordance with the terms of this Agreement…"  (Id.)  Section 3 of the Agreement states, *inter alia*, that "[i]t is agreed that if Super/Porter resigns from employment or is terminated, with or without cause, from employment with any of these entities, Super/Porter will within fourteen calendar days of such resignation or termination, move out of the Apartment…The Super/Porter shall remove all personal possessions from the Apartment.  (Id.)  Anything remaining in the Apartment shall be deemed abandoned and may be discarded by the Licensor at Super/Porter's sole cost and expense, without recourse to Licensor."  (Id.)

In or around 2017, the managing agent of Defendant Aurora Condominium approved and allowed Plaintiff to store some of his personal effects in an unused storage room.  (Id. ¶ 13.)  In fact, the condo board also approved Plaintiff to use the aforementioned storage space and build out the storage unit at his own expense.  (Id.)  The approval provided for Plaintiff to use and build out the storage space is supported from a letter dated March 6, 2020, from the former managing agent for the Aurora Condominium, Ryan Webler (the "March Letter").  (Id.)  The March Letter is written by Mr. Webler as the Property Manager for WMW Realty Management LLC ("WMW").

10

(Id.)  The March Letter states: "I was the managing agent for the Aurora Condominium located at 837 Washington Av, Bronx, NY 10451 from 2008 through the end of 2019.  On or around 2017, the Superintendent Sorin Lazar approached the Board of Managers regarding some unused space in the basement for his personal storage.  The Board at the time approved Sorin to use the space and build out the storage unit at his own expense."  (Id.)

Plaintiff was the superintendent at Defendant Aurora Condominium until he was wrongfully and maliciously terminated on January 28, 2020.  (Id. ¶ 14.)  Upon his termination, Plaintiff was told he had to move out of his unit at the Aurora Condominium by the end of February 2020.  (Id.)   Accordingly, on or about February 28, 2020, because he had to move out at the end of February, Plaintiff went to his assigned storage unit to remove his personal effects.  (Id. ¶ 15.)

On February 28, 2020, Plaintiff received an email from the Director of Insurance for REM Residential, Shpresa Nela, which stated: "Hello Sorin, I had a discussion with the Board and I want to meet with you regarding the move out terms and possible compensation.  I would like to see if we can come up with an agreement before the eviction process starts.  I suggest you agree to meet with me so I can see if I can help you with the process.  I am not your enemy and want to do what's fair so please let me know if you are free this afternoon."  (Id.)

Thereafter, without warning or cause, Mr. Lazar was arrested by Defendant Nunezramos.  (Id. ¶ 16.)

Based upon the Agreement, the Board of Managers 2017 approval permitting Plaintiff to store his personal effects in an unused storage unit (which is supported by the March Letter), and emails being exchanged at the end of February 2020, the Aurora Defendants knew that Plaintiff did not steal anything and that he was simply removing his personal effects from the storage unit

that was assigned to him.  (Id. ¶¶ 21, 35.)  The Aurora Defendants elected to withhold and ignore this exculpatory evidence that would have exonerated Plaintiff.  Therefore, the SAC sufficiently alleges a section 1983 claim against the Aurora Defendants.  Lienau, 2013 U.S. Dist. LEXIS at * 22-24 (citing Anilao v. Spota, 774 F. Supp. 2d 457, 500-02 (E.D.N.Y. 2011); Watson, 2010 U.S. Dist. LEXIS 103473, 2010 WL 3835047, at *8)).

In addition, joint action between the Aurora Defendants and City Defendants is evidenced from the parties' joint review of a video tape that shows Plaintiff lawfully and properly removing his personal effects from the storage unit that was assigned to him.  (SAC ¶¶ 20, 35.)  The video appears to be surveillance footage of Plaintiff entering his assigned storage unit on February 28, 2020, at approximately 6:35pm and removing his personal belongings and effects, as he needed to do upon moving out.  (Id. ¶ 20.)  During the video, Defendant Jewels can be hard speaking with an NYPD police officer, who upon information and belief is Defendant Nunezramos.  (Id.)  The video shows Plaintiff get off the elevator and approach his storage unit.  (Id.)  After Plaintiff opens the storage unit and removes his personal effects, Defendant Jewels can be heard on the phone with someone else saying "Here with the cops, they want to have a chat with you. We are going over the footage of Sorin going into the closet and packing his wagon."  (Id.) Further evidence of the conspiracy between the private and state actors is evident from the fact that during the video, Defendant Jewels discusses and references a "list" from WMW, whose Property Manager wrote the March Letter which unequivocally states that Plaintiff was given permission by the board to use a storage space.  (Id. ¶ 35.)  Upon information and belief, the WMW referenced is WMW Realty Management LLC, whose Property Manager (Ryan Webler) wrote the March Letter stating that Plaintiff had been approved by the Board to use the space in the basement for his personal

storage. (Id. ¶ 20.) On the video, a police officer can also be heard talking on the phone with someone about the surveillance footage, presumably the individual who was talking with Defendant Jewels. (Id.) The video of Defendant Jewels meeting with the NYPD and showing the police surveillance footage of Plaintiff removing his personal effects from his storage unit shows that the parties had a meeting of the minds under the common goal to charge Plaintiff with a crime evidenced by how, inter alia, they ignored the above referenced exculpatory evidence that was known and readily available. (Id. ¶ 35.)

Therefore, the Court should deny the Aurora Defendants motion to dismiss the SAC's section 1983 claim.[1]

**C. The SAC's Negligence Claims are Sufficiently Pled**

The Aurora Defendants contend that the SAC's negligence claims against them should be dismissed because no duty of care exists on account of Plaintiff's termination from his employment. (See Defendants' Brief at pp. 14-15.) This argument is without merit. First, the Aurora Defendants fail to cite any case law in support of their assertion that no duty of care exists due to Plaintiff being terminated from employment. (Id. p. 15.) Second, the basis for the negligence claims here comes from the fact that the Aurora Defendants had a duty of care to ensure that they followed their proffered and promised policies and procedures, namely (as supported by the March Letter), the Board of Managers 2017 approval for Plaintiff to store his personal effects

---

[1] The Aurora Defendants also erroneously contend that probable cause here is a complete defense to the claims alleged. (See Defendants Brief p. 13.) This argument fails for several reasons. First, the Aurora Defendants have not proffered any evidence (outside of their counsel's claim in a memo of law) that probable cause existed here. Second, any assertion on probable cause is premature on the instant motion to dismiss. The issue of probable cause is certainly a dispute between the parties to this case and must be decided by the Court based upon a full evidentiary record.

in an unused storage unit.  (<u>See</u> SAC ¶¶ 13, 84, 85, 93, 94.)  The Aurora Defendants breached this duty of case by, <u>inter alia</u>; failing to adhere and enforce the agreed to policies, procedures, rules and regulations; failing to address, confront, prevent and protect Plaintiff from being falsely and wrongfully arrested on account of Defendant Jewels' false police report; and allowing Defendant Jewels to file a false police report when it knew that Plaintiff had been assigned the storage space at issue and was removing his personal effects so he could leave the premises by the end of February 2020.  (<u>Id</u>. ¶¶ 86, 95.)

Therefore, the Court should deny the Aurora Defendants motion to dismiss the SAC's negligence claims.

**D.  The SAC's NIED Claim is Sufficiently Pled**

Under New York law, a cause of action for negligent infliction of emotional distress is permitted under three circumstances: on a "bystander" theory, when the plaintiff witnesses an injury to another person; on a "direct duty" theory, when "a plaintiff suffers emotional distress caused by defendant's breach of a duty which unreasonably endangered plaintiff's own physical safety"; or "where there is an especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious." <u>P. A. v. City of N.Y.</u>, 44 F. Supp. 3d 287, 311 (E.D.N.Y. 2014) (internal citation omitted).

The Aurora Defendants contend that the SAC's NIED claim should be dismissed under the direct duty theory.  (<u>See</u> Defendants Brief at p. 17.)  Specifically, the Aurora Defendants assert that the SAC fails to allege either any duty of care or that Plaintiff's physical safety was endangered.  (<u>Id</u>.)  This argument is meritless.   Regarding duty of care, the SAC alleges that the Aurora Defendants had a duty of care to ensure that they followed their proffered and promised

14

policies and procedures, namely (as supported by the March Letter), the Board of Managers 2017 approval for Plaintiff to store his personal effects in an unused storage unit.  (See SAC ¶¶ 13, 84, 85, 93, 94, 104, 105.)  The SAC also alleges that Plaintiff suffered an emotional injury from Defendants' breach of duty which unreasonably endangered his own physical safety because he was subjected to an unlawful arrest for crimes he did not commit.  (Id. ¶¶ 60-65, 111.)  As a result of the Aurora Defendants above detailed withholding of exculpatory evidence that would have exonerated Plaintiff, and the corresponding filing of a false police report concerning Plaintiff's lawful removal of his personal effects, Plaintiff's physical safety was endangered on account of being wrongfully arrested.  (Id.)

The Aurora Defendants also contend that no special circumstances exist here for the NIED claim.  (See Defendants Brief pp. 17-18.)  This argument misses the mark.  The SAC alleges a special likelihood of genuine and serious mental distress arising from the fact that Plaintiff was unlawfully arrested and detained for crimes he did not commit and was the victim of an unlawful scheme to deprive him of his rights.  (SAC ¶ 112.)  The SAC alleges that Plaintiff had to endure: (1) the Aurora Defendants withholding of exculpatory evidence (including, but not limited to the Agreement, and Board of Managers approval of his storage unit) that would have exonerated him; (2) the filing of a false police report; (3) his false arrest on account of the malicious campaign perpetrated by Defendants; (4) thereby being assaulted and battered during his arrest; (5) being compelled to retain an attorney and make numerous court appearances before the charges were dismissed; (6) the publication of a newsletter by the Aurora Defendants falsely claiming that Plaintiff was a thief; and (7) physical injuries and emotional damages on account of this conduct.

(See SAC generally.)  This campaign by the Aurora Defendants to harm Plaintiff is exactly the type of conduct that warrants liability under the special circumstances theory.[2]

### E.  The SAC's IIED Claims are Properly Pled

To state a claim for IIED, a plaintiff must allege and establish: (1) extreme and outrageous conduct; (2) with the intent to cause emotional distress; (3) a causal connection between the conduct and the alleged injury; and (4) that plaintiff has suffered severe emotion distress. Reaves v. New York City Dep't of Educ., 2020 N.Y. Misc. LEXIS 3626 *14; 2020 NY Slip Op 32480(U) (Sup. Ct. N.Y. Cty. June 3, 2020) (citing Howell v. New York Post Co., 81 N.Y.2d 115, 612 N.E.2d 699, N.Y.S.2d 350 (1993)).  In addition, "when severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation, a remedy is available in the form of an action for the IIED." Id. at *15 (quoting Nader v. General Motors Corp, 25 N.Y.2d 560, 255 N.E.2d 765, 307 N.Y.S.2d 647 (1970)).  Furthermore, extreme and outrageous conduct may arise from abuse by the defendant of some relation or position that gives the defendant actual or apparent power to damage Plaintiff's interests. Id. at *16 (citing Vasarhelyi v. New Sch. for Social Research, 230 A.D.2d 658, 661 (1st Dept 1996)).

The Aurora Defendants contend that the intentional infliction of emotional distress claim should be dismissed on the ground that no extreme or outrageous conduct exists.  (See Defendants Brief pp. 18-19.) This argument is meritless. The SAC alleges that the Aurora Defendants engaged in a deliberate, malicious campaign of harassment and intimidation against Plaintiff by: (1)

---

[2] The Aurora Defendants also contend that the SAC does not contain sufficient allegations that Defendant Jewels engaged in any extreme or outrageous conduct.  (See Defendants Brief p. 16.) This argument is addressed below in Plaintiff's opposition to the Aurora Defendants motion to dismiss the IIED claim.

withholding exculpatory evidence (including, but not limited to the Agreement, and Board of Managers approval of his storage unit) that would have exonerated him; (2) the filing of a false police report; (3) subjecting Plaintiff to a false arrest on account of the malicious campaign perpetrated by these Defendants; (4) thereby causing Plaintiff to be assaulted and battered during his arrest; (5) compelling Plaintiff to retain an attorney and make numerous court appearances before the charges were dismissed; (6) the publication of a newsletter falsely claiming that Plaintiff was a thief; and (7) causing Plaintiff to suffer physical injuries and emotional damages on account of this conduct.  (See SAC generally.)  The SAC alleges that the Aurora Defendants used their position of power to damage Plaintiff's interest.  This is the exact type of behavior which amounts to extreme and outrageous conduct sufficient enough to withstand a motion to dismiss.

### D.  Leave to Amend Should Be Permitted

Plaintiff believes that the SAC contains sufficient factual contend to withstand the Aurora Defendants motion to dismiss.  Nevertheless, in the event that the Court finds that the SAC is deficient in any area, leave to amend should be permitted.  "[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility," courts should grant leave to amend pursuant to Federal Rule of Civil Procedure 15. Monahan v. New York Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000).

Here, Plaintiff has not unduly delayed in pursuing their claims, acted in bad faith, or acted with any dilatory motives.  Plaintiff notes that Aurora Defendants have not argued otherwise. Furthermore, given the early procedural posture of the case and the fact that Plaintiff's claims are certainly meritorious, it would not be unduly prejudicial or futile to grant Plaintiff leave to amend the SAC (if necessary).

17

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the motion to dismiss the SAC in its entirety.

Dated:  White Plains, New York
          January 12, 2022

                                        LAW OFFICE OF
                                        RICHARD ST. PAUL ESQ., PLLC

                                        By: *Richard St. Paul*
                                        Richard St. Paul., Esq. (RP-6388)
                                        445 Hamilton Avenue, Suite 1102
                                        White Plains, New York 10601
                                        (914) 517-7568 (tel.)
                                        (914) 517-7569 (fax)

                                        Attorneys for Plaintiff