The Law Office of Richard St. Paul, Esq., PLLC
Richard St. Paul, Esq.
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
Telephone: (914) 517-7568
Facsimile: (914) 517-7569
Attorneys for Plaintiff
Sorin Lazar

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
SORIN LAZAR, :
:
Plaintiff, :        DOCKET NO. 1:21-cv-01748
:
:
:
-against- :        ~~SECOND~~ THIRD
:        AMENDED COMPLAINT
THE CITY OF NEW YORK,
P.O. JASMINE NUNEZRAMOS, in her Official and
individual capacity, CYRIS JEWELS, in her Official
capacity as a Board Member of the Aurora
Condominium and in her individual capacity,
and THE AURORA CONDOMINIUM,
:
:
:
Defendants. :
-------------------------------------------------------------------x

Plaintiff SORIN LAZAR ("Plaintiff"), by his attorneys, The Law Office of Richard St.

Paul, Esq., PLLC, as and for his ~~Second~~ Third Amended Complaint against Defendants, The City

of New York, P.O. Jasmine Nunezramos, Cyris Jewels and The Aurora Condominium, alleges as

follows:

<u>INTRODUCTION</u>

1.      This action arises under the United States Constitution, particularly under the

provisions of the Fourth and Fourteenth Amendments to the Constitution of the United States, and

1

under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

2.      Defendants violated the constitutional rights of Plaintiff by falsely arresting and detaining him for crimes he did not commit.  Notably, Defendant Nunezramos arrested Mr. Lazar despite being told that he was removing items from his assigned storage space in which he had a key.  Plaintiff was arrested and forced to make numerous appearances before the case against him was dismissed.

3.      Defendant Cyris Jewels fraudulently, falsely, and with malicious intent filed a false report with the New York City Police Department ("NYPD") thereby causing Plaintiff to be falsely arrested.   Defendant Cyris Jewels further published false statements about Plaintiff committing a crime.

4.      Each and all of the acts of the Defendants alleged herein were done by the Defendants, their agents, servants and employees, and each of them, not only as individuals, but under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York and The City of New York, and under the authority of their office as police officers of said state, city and county.

<u>PARTIES</u>

5.      Plaintiff Sorin Lazar is an individual and at all times relevant in this complaint a resident of the State of New York and County of the Bronx.

6.      Defendant, The City of New York, was and still is a municipal corporation duly organized and existing under and by virtue of the laws of State of New York.  It owns, operates, manages, directs, and controls the NYPD.

2

7.     Upon information and belief, that at all times hereinafter mentioned, and on or prior to February 28, 2020, Police Officer Jasmine Nunezramos, was employed by Defendant, City of New York, as a police officer. At all relevant times, this Defendant was acting under color of state law and within the scope of his employment.

8.     Defendant Cyris Jewels is an individual and at all times relevant in this complaint a resident of the State of New York and County of the Bronx.   At the time of the incident at issue, Defendant Jewels was a board member of the Aurora Condominium.

9.     Defendant, The Aurora Condominium was and still is a Condominium duly organized and existing under and by virtue of the Condominium laws of State of New York.

<u>JURISDICTION AND VENUE</u>

10.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, which confer original jurisdiction upon federal district courts in suits seeking to redress the deprivation of rights secured by the United States Constitution and laws of the United States.

11.     Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to Mr. Lazar's claims occurred in this District.

<u>FACTUAL ALLEGATIONS</u>

12.     In or about January 2013, Plaintiff was hired to be the superintendent of the Aurora Condominium.   Plaintiff and the Aurora Condominium entered into a "Superintendent/Porter License Agreement" (the "Agreement") dated February 1, 2013.   Section 1 of the Agreement states, *inter alia*, that "Super/Porter expressly acknowledges that Apartment 2F (the "Designated Superintendent Apartment") in the Building, the apartment that has been designated for occupancy by Super/Porter.   Super/Porter will take possession of the Designated Superintendent Apartment in accordance with the terms of this Agreement…"   Section 3 of the Agreement states, *inter alia*,

3

that "[i]t is agreed that if Super/Porter resigns from employment or is terminated, with or without cause, from employment with any of these entities, Super/Porter will within fourteen calendar days of such resignation or termination, move out of the Apartment…The Super/Porter shall remove all personal possessions from the Apartment.  Anything remaining in the Apartment shall be deemed abandoned and may be discarded by the Licensor at Super/Porter's sole cost and expense, without recourse to Licensor."

13.     In or around 2017, the managing agent of Defendant Aurora Condominium approved and allowed Plaintiff to store some of his personal effects in an unused storage room.  In fact, the condo board also approved Plaintiff to use the aforementioned storage space and build out the storage unit at his own expense.   The approval provided for Plaintiff to use and build out the storage space is supported from a letter dated March 6, 2020 from the former managing agent for the Aurora Condominium, Ryan Webler (the "March Letter").  The March Letter is written by Mr. Webler as the Property Manager for WMW Realty Management LLC ("WMW").  The March Letter states: "I was the managing agent for the Aurora Condominium located at 837 Washington Av, Bronx, NY 10451 from 2008 through the end of 2019.  On or around 2017, the Superintendent Sorin Lazar approached the Board of Managers regarding some unused space in the basement for his personal storage.  The Board at the time approved Sorin to use the space and build out the storage unit at his own expense."

14.     Plaintiff was the superintendent at Defendant Aurora Condominium until he was wrongfully and maliciously terminated on January 28, 2020.  Upon his termination, Plaintiff was told he had to move out of his unit at the Aurora Condominium by the end of February 2020.

15.     Accordingly, on or about February 28, 2020, because he had to move out at the end of February, Plaintiff went to his assigned storage unit to remove his personal effects.  On February

28, 2020, Plaintiff received an email from the Director of Insurance for REM Residential, Shpresa Nela, which stated: "Hello Sorin, I had a discussion with the Board and I want to meet with you regarding the move out terms and possible compensation.  I would like to see if we can come up with an agreement before the eviction process starts.  I suggest you agree to meet with me so I can see if I can help you with the process.  I am not your enemy and want to do ~~whats~~what's fair so please let me know if you are free this afternoon."  That same day, Plaintiff received a call from Shpresa Nela, who told Plaintiff, among other things, that in addition to moving out, the Board wanted his storage space cleared out by the end of the day.  Plaintiff told Shpresa that he could not do it immediately, but that he would be back later that day to clear his storage unit.  Upon information and belief, and as detailed below, this is how and why Defendant Jewels knew to look at the building –video surveillance footage of Plaintiff entering his assigned storage unit on February 28, 2020 at approximately 6:35pm to remove his personal belongings and effects, which was used as a basis to falsely accuse Plaintiff to committing various crimes.   Defendants Jewels and Aurora Condominium wanted Plaintiff to be completely off the premises by the end of February 28, 2020, which included removing all of his personal effects from his assigned storage unit.  In addition, it was the Defendants Jewels and Aurora Condominium intention to use the arrest as leverage to drop the charges against Mr. Lazar if he moved out.  These defendants would use any means necessary to achieve this collateral objective, including the perverted act of fabricating false criminal charges against him.

16.    Thereafter, without warning or cause, Mr. Lazar was arrested by Defendant Nunezramos.    Defendant Nunezramos assaulted Plaintiff by intentionally and offensively contacting Plaintiff during his false arrest.  During the arrest, Defendant Nunezramos was

extremely aggressive, violently grabbed Plaintiff and handcuffed Plaintiff in a violent and aggressive manner.

17.     As a result of Defendant Nunezramos's conduct, Plaintiff suffered physical injuries to his arms/wrists.

18.     After his arrest, Mr. Lazar gave a statement to an agent of the New York City Police Department in which he told the officer he was removing his personal items from his storage unit. Notably, approximately on day before his arrest, Plaintiff went to the New York City Police Department and told the person at the front desk that someone had tampered with the lock to his assigned storage space, evidenced by the fact that the lock was filled with glue.  The police did nothing with this information, including using it as a part of their investigation into the false charges that were filed against Plaintiff.

19.     Defendant Cyris Jewels fraudulently, falsely, and with malicious intent filed a false report with the NYPD stating that Mr. Lazar stole property belonging to The Aurora Condominium.  Defendant Jewels stated, *inter alia*, that Plaintiff used a set of keys to enter a locked supply closet and removed various items, including two security monitors and one drill and impact driver set.

20.     Upon information and belief, Defendant, Cyris Jewels showed a video tape to Defendant Nunezramos of Mr. Lazar removing the monitors and other items from his storage unit. The video appears to be surveillance footage of Plaintiff entering his assigned storage unit on February 28, 2020 at approximately 6:35pm and removing his personal belongings and effects, as he needed to do upon moving out.  During the video, Defendant Jewels can be hard speaking with an NYPD police officer, who upon information and belief is Defendant Nunezramos.  The video shows Plaintiff get off the elevator and approach his storage unit.  After Plaintiff opens the storage

unit and removes his personal effects, Defendant Jewels can be heard on the phone with someone else saying "Here with the cops, they want to have a chat with you.  We are going over the footage of Sorin going into the closet and packing his wagon."  Upon information and belief, the WMW referenced is WMW Realty Management LLC, whose Property Manager (Ryan Webler) wrote the March Letter stating that Plaintiff had been approved by the Board to use the space in the basement for his personal storage.   On the video, a police officer can also be heard talking on the phone with someone about the surveillance footage, presumably the individual who was talking with Defendant Jewels.  Upon information and belief, the individual who was speaking with the police was Shpresa Nela, who knew that Plaintiff, would be clearing out his storage space that day.

21.      Jewels knew or should have known that Plaintiff did not steal these items – he removed his personal effects from a storage unit that was assigned to him.

22.      Despite being made aware that Plaintiff was removing his personal effects from his storage unit, Defendants continued and elected to prosecute Mr. Lazar.

23.      Plaintiff was charged with petit larceny, criminal possession of stolen property and criminal trespass.  All of these false charges arose from Plaintiff simply removing his personal effects from a storage unit so he could be completely moved out of the Aurora Condominium by the end of February 2020.

24.      On or about March of 2020, Defendants Aurora Condominium and Cyris Jewels caused to publish a newsletter falsely claiming that Plaintiff was a thief.  The newsletter was the March 2020 edition of the "Aurora News", which is a periodic publication sent by the Board to all people living in the building.  The editors of the Aurora News are listed on page 1 of the publication as Tonille Hurley and the Aurora Board of Managers.  Page 2 of this newsletter lists Defendant Jewels as a member of the Board of Managers.  Page 3 of this newsletter states "Building Theft:

7

On Friday evening, 2/28/20, a former employee was observed on surveillance cameras entering a cellar storage closet and removing Aurora property.  The police were called and the individual was arrested."  This was a false statement of fact.  The statement in the newsletter about the "former employee" who removed Aurora property and was arrested was of and concerning the Plaintiff because at the time of this incident, Plaintiff was one of only 2 employees that existed.  Therefore, since the other individual was still employed at the time of this incident, it was thus known by the people who lived in the building and who read the newsletter that Plaintiff was the "former employee".

25.     As a result of the arrest, Plaintiff hired an attorney and was compelled to make numerous appearances in Court.

26.     In or about January 2021, the charges against Plaintiff arising from his lawful removal of his personal effects were dismissed.

AS AND FOR A FIRST CAUSE OF ACTION
(All Defendants City of New York and Nunezramos– 42 U.S.C. § 1983 CONSPIRACYFalse Arrest)

27.     Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs of his First Third Amended Complaint as though fully set forth herein.

28.     Count One is brought pursuant to 42 U.S.C. § 1983 and the Fourth Amendment of the U.S. Constitution.

29.     Defendants are "persons" under 42 U.S.C. § 1983 who acted "under the color of state law" and deprived Plaintiff of rights secured by the U.S. Constitution.

30.     The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable…seizures…and no warrants shall issue, but on probable cause . . . ." U.S. CONST. amend. IV.

8

31.     A § 1983 claim for false arrest is based upon the Fourth Amendment right to be free from unreasonable seizures.

32.     As more fully detailed in the preceding paragraphs, on or about February 28, 2020, at the Aurora Condominium, the Defendants, their agents, servants and employees conspired to wrongfully and falsely subject Plaintiff, Sorin Lazar to arrest and imprisonment, without any right or grounds therefore and in violation of Plaintiff's rights under the U.S. Constitution.

33.     As more fully detailed in the preceding paragraphs, Defendants intended to confine Plaintiff, evidenced from, *inter alia*, the fact that they unlawfully arrested and confined Plaintiff against his will from February 28 to on or about February 29, 2020.

34.     As more fully detailed in the preceding paragraphs, on or about February 28, 2020, the Defendants conspired to wrongfully and falsely accused the Plaintiff, Sorin Lazar, of stealing property and knowingly possessing stolen property.

35.     As detailed more fully in the preceding paragraphs, Defendants Aurora Condominium and Jewels willfully participated in joint action with Defendant Nunezramos and the NYPD to conspire and deprive Plaintiff of his constitutional rights by, *inter alia*, improperly influencing the facts and by withholding exculpatory evidence.  As detailed more fully above, the video of Defendant Jewels meeting with the NYPD and showing the police surveillance footage of Plaintiff removing his personal effects from his storage unit shows that the parties had a meeting of the minds under the common goal to charge Plaintiff with a crime evidenced by how, *inter alia*, they ignored exculpatory evidence that was known and readily available.  Upon information and belief, Defendants Aurora Condominium and Jewels knew that the board gave Plaintiff approval to use storage space in the basement to store his personal effects, and despite this knowledge, withheld this exculpatory evidence and improperly influenced the NYPD to unlawfully arrest

Plaintiff.  Defendants Aurora Condominium and Jewels were also on notice and aware that under the Agreement, Plaintiff had 14 calendar days after his termination to move out and remove his personal effects and that Plaintiff had to be out of the building by the end of February 2020, which is exactly what the video shows Plaintiff doing.  All these facts provide a basis to exonerate Plaintiff and prevent him from being falsely and illegally arrested for simply taking his personal items out of his assigned storage space.  Further evidence of the conspiracy between the private and state actors is evident from the fact that during the video, Defendant Jewels discusses and references a "list" from WMW, whose Property Manager wrote the March Letter which unequivocally states that Plaintiff was given permission by the board to use a storage space.  As detailed more fully in the preceding paragraphs, Defendants Aurora Condominium and Jewels commenced the criminal proceedings at issue by making false accusations that Plaintiff stole certain items and that these Defendants wrongful motive is evidenced from the fact that they were aware that Plaintiff had been given permission to use certain storage space and withheld this information as they manipulated and improperly influenced the events at issue to harm Plaintiff.

36.     As detailed more fully in the preceding paragraphs, Plaintiff was conscious of and did not consent to the unlawful confinement, evidenced from, *inter alia*, the fact that he made the NYPD aware that he was simply removing his personal effects from his assigned storage unit.

37.     That the said arrest and imprisonment was caused by the Defendants, their agents, servants and employees, without any warrant or other legal process and without authority of the law and without any reasonable cause or belief that the Plaintiff, Sorin Lazar, was in fact guilty of such crimes.

38.     The Plaintiff's arrest and imprisonment were not justified by probable cause or other legal privilege; the Defendants, their agents, servants and employees, acting under the color

of statute, ordinances, regulations, customs and usages of the City of New York, and under the authority of their office as police officers for said City, falsely charged the Plaintiff with the Penal Law violations although the Defendants, acting in such capacity, knew that such charges were false.

39.     While the Plaintiff was so engaged, as aforesaid, the Defendants, their agents, servants and employees, wrongfully and unlawfully, against the Plaintiff's wish, without probable or reasonable cause, and on the sole charge, then made, that Plaintiff stole certain property, in that he was arrested and imprisoned and with full force of arms, they forcibly and violently seized, assaulted and laid hold of and compelled him to go with the said defendant police officers to then to be detained and imprisoned at the NYPD and continuing to other places and times, including, but not limited to a detention cell located at the Bronx County Criminal Court, where the Plaintiff was further detained and imprisoned until such time as he was to be arraigned.

40.     That the Defendants, their agents, servants and employees acting within the scope of their employment, detained and imprisoned the Plaintiff even though the Defendants, their agents, servants and employees, had the opportunity to know or should have known, that the matters hereinbefore alleged, wrongfully, unlawfully and without a sufficient charge having been made against the Plaintiff, directed that the Plaintiff be searched and placed in confinement at said locations.

41.     That the Plaintiff was wholly innocent of the said criminal charges and did not contribute in any way to the conduct of the Defendants, their agents, servants and employees and was forced by the Defendants to submit to the aforesaid arrest and imprisonment thereto entirely against his will.

11

42.     That as a result of the aforesaid accusations made by the Defendants, their agents, servants and employees acting under their employment and within the scope of their authority, made falsely, publicly, wickedly and maliciously, the Plaintiff was compelled to appear before a Judge of the Bronx County Criminal Court, before being released from confinement.

43.     As detailed more fully in the preceding paragraphs, the Defendants, their agents, servants and employees, as set forth aforesaid on the aforementioned date, time and place, intended to confine the Plaintiff; in that the Plaintiff was conscious of the confinement; Plaintiff did not consent to the confinement; and that the confinement was not otherwise privileged.

44.     Defendant City of New York is liable for creating and/or maintaining a policy, practice, and/or custom of knowingly failing to check alibis, failing to properly investigate the incident at issue, failing to obtain a warrant for Plaintiff's arrest, unlawfully arresting Plaintiff without probable cause, and failure to train and supervise the Defendant Nunezramos and any and all other police officers that participated in such conduct, created an environment that led to harassment, threats, and an assault on Mr. Lazar that resulted in significant harm to him.  Such policy, practice, and/or custom caused the unconstitutional arrest and detention of Mr. Lazar at NYPD.

45.     The Defendants, their agents, servants and employees permitted the use of policy and/or drafted policy that was violative of the constitutional rights of the above named Plaintiff; and, in that each and all of the acts of the Defendants, their agents, servants and employees alleged herein were done not as individuals but under the color and pretense of the statutes, ordinances, regulations, customs and usages of the City of New York, and under the authority of their office as police officers for said city and county.

12

46.     The Defendant, City of New York, its agents, servants and employees failed to adequately and properly hire, retain, train, supervise, discipline or in any other way control the behavior and performance of Defendant Nunezramos, their agents, servants and employees; that in their hiring practices in the exercise of their police functions and their failure to enforce the laws of the City of New York and State of New York is evidence of the reckless lack of cautious regard for the rights of the public including Plaintiff; in that they exhibited a lack of degree of due care which prudent and reasonable individuals would show in executing the duties of the Defendants.

47.     The failure of the Defendant, City of New York, their agents, servants and employees to hire, train, supervise, discipline or in any other way control Defendant Nunezramos, in the exercise of their functions; in that their failure to enforce the laws of the City of New York and State of New York was and is carried out willfully, wantonly, maliciously and with such reckless disregard for the consequences so as to display a conscious disregard for the dangers of harm and injury to the citizens of the City of New York including Plaintiff.

48.     Due to the acts of the Defendants, their agents, servants and employees herein, the failure of the City of New York to discipline and properly hire Defendant Nunezramos and the continued employment of Defendant Nunezramos presents a clear and present danger to the citizens of the City of New York.

49.     Plaintiff did not commit any illegal act, either before or at the time he was falsely arrested and imprisoned, maliciously prosecuted and deprived of his constitutional rights as set forth in the Constitution of the United States, particularly 42 U.S.C. § 1983.

50.     That at all times hereinafter mentioned, Defendant Nunezramos was employed in her respective capacity by the Defendant City of New York and was acting under the color of her

13

official capacity and their acts were performed under the color of the policies, statute, ordinances, rules, and regulations of the City of New York.

51.     That at all times hereinafter mentioned, Defendant Nunezramos was acting pursuant to order directives from defendant City of New York.

52.     That during all times hereinafter mentioned, the defendant police officers and each of them, separately, and in concert acted under color and pretense of law, to wit: under color of the statutes, ordinances, regulations, customs and usages of the City of New York and the defendants here, separately and in conceit, engaged in the illegal conduct here mentioned to the injury of the Plaintiff, Sorin Lazar, and deprived Plaintiff of the rights, privileges and immunities secured to plaintiff by the Fourth Amendment to the Constitution of the United States and the laws of the United States.

53.     The Police Officers of the Defendant City of New York and its individual members who are agents, servants and employees of defendants, together with persons unknown to Plaintiff, acting under color of law, have subjected Plaintiff and other persons to a pattern of conduct consisting of illegal harassment, false imprisonments and arrests and malicious prosecutions in denial of rights, privileges and immunities guaranteed Plaintiff, Sorin Lazar and other citizens by the Constitution of the United States.

54.     This systematic pattern of conduct consists of a large number of individual acts of harassment, intimidation, false arrest and false imprisonment and malicious prosecution visited on Plaintiff, Sorin Lazar by members of the police department of Defendant City of New York, acting in concert with persons unknown to Plaintiff and under color of law and said acts, while carried out under color of law, have no justification or excuse in law and are instead illegal, improper and

14

unrelated to any activity in which police officers may appropriately and legally engage in the course of protecting persons or property or ensuring civil order.

55.     Although Defendants knew or should have known of the fact that this pattern of conduct was carried out by their agents, servants and employees, the Defendant City of New York has not taken any steps or made any efforts to halt this course of conduct, to make redress to the Plaintiff or other citizens injured thereby, or to take any disciplinary action whatever against any of their employees or agents.

56.     That by reason of the aforesaid violations, false arrest and false imprisonment, caused by the Defendants, their agents, servants and employees who conspired together to enter into a nefarious scheme to wrongfully deprive the Plaintiff and compel him to abandon his rights and privileges as provided him in the Constitution of the United States of America, and the laws thereto, the Defendants, their agents, servants and employees violated 42 U.S.C. § 1983, in that the Defendants, their agents, servants and employees acted as persons who under color of any statute, ordinance, regulation, custom or usage of the City of New York, subjected or caused to be subjected, a citizen of the United States or other persons within the jurisdiction, particularly the Plaintiff, Sorin Lazar, thereof  to be deprived of his rights, privileges or immunities received by the Constitution and laws of the United States of America; was subjected to great indignities and humiliation, and pain and distress of mind and body and was held up to scorn and ridicule, injured in his character and reputation, was prevented from attending his usual business and vocation and was injured in his reputation in the community and the acts aforementioned were committed with the aim of injuring and damaging Plaintiff.

57.     That by reason of the false arrest, imprisonment and detention of the Plaintiff, and deprivation of his rights and liberties as guaranteed by the U.S Constitution, by the Defendants,

15

their agents, servants and employees, acting within the scope of their authority, and without any probable or reasonable cause, Plaintiff was subjected to great indignities, humiliation and ridicule in being so detained, charged and prosecuted with various crimes, and greatly injured in his credit and circumstances and was then and there prevented and hindered from performing and transacting his necessary affairs and business, and he was caused to suffer much pain in both mind and body, the loss of employment and the loss of employment opportunities and among other things, he suffered conscious pain and suffering, and that he was otherwise damaged.

58.     Plaintiff demands judgment on the first cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.

<u>AS AND FOR A SECOND CAUSE OF ACTION</u>
(Assault – Defendant Nunezramos)

59.     Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs of his First Third Amended Complaint as though fully set forth herein.

60.     As more fully described in the preceding paragraphs, Defendant Nunezramos assaulted Plaintiff by intentionally and offensively contacting Plaintiff during his false arrest.

61.     As more fully described in the preceding paragraphs, Defendant Nunezramos committed an overt and menacing act by, *inter alia*, aggressively and violently grabbing Plaintiff and by handcuffing Plaintiff in a violent and aggressive manner during his false arrest.

62.     As a result of the actions of Defendant Nunezramos, Plaintiff was placed in a position of imminent apprehension of harmful or offensive contact and feared for his safety.

63.     Defendant Nunezramos acted oppressively and maliciously, engaging in conduct with a willful and conscious disregard of Plaintiff's rights and safety, and Defendant Nunezramos's conduct has the character of outrage frequently associated with crime.

16

64.     As a direct and proximate result of Defendant Nunezramos's assault, the Plaintiff suffered severe apprehension of harmful contact fearing for his safety.

65.     As a direct and proximate result of Defendant Nunezramos's conduct, Plaintiff suffered physical injuries, was required to obtain medical treatment for physical and emotional injuries, and was otherwise hurt, injured and damaged.

66.     By reason of the foregoing, Plaintiff demands judgment on the second cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.


AS AND FOR A THIRD CAUSE OF ACTION
(Battery – Defendant Nunezramos)

67.     Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs of his ~~First~~ Third Amended Complaint as though fully set forth herein.

68.     As more fully described in the preceding paragraphs, Defendant Nunezramos committed an unlawful battery against Plaintiff by intentionally and offensively contacting Plaintiff during his unlawful arrest.

69.     As more fully described in the preceding paragraphs, Defendant Nunezramos had bodily contact with Plaintiff by aggressively and violently grabbing Plaintiff and by handcuffing Plaintiff in a violent and aggressive manner during his false arrest.

70.     As more fully described in the preceding paragraphs, Defendant Nunezramos intended to make the bodily contact, evidenced by the fact that she aggressively, offensively and violently grabbed Plaintiff and by handcuffing Plaintiff in a violent and aggressive manner during his false arrest.

17

71.     As more fully described in the preceding paragraphs, the bodily contact was (1) harmful in that it caused Plaintiff to suffer physical injuries to his arms/wrists and (2) offensive in which it offended Plaintiff's reasonable sense of personal dignity whereby as a result of Defendant Nunezramos's bodily contact Plaintiff suffered mental anguish, psychological injuries, shame, humiliation, indignity and fear.  The bodily contact here is clearly unwarranted by normal social usages at the time and place it was inflicted.

72.     Defendant Nunezramos acted oppressively and maliciously, engaging in conduct with a willful and conscious disregard of Plaintiff's rights and safety, and Defendant Nunezramos's conduct has the character of outrage frequently associated with crime.

73.     As a direct and proximate result of Defendant Nunezramos's conduct, Plaintiff suffered physical injuries, was required to obtain medical treatment for physical and emotional injuries, and was otherwise hurt, injured and damaged.

74.     By reason of the foregoing, Plaintiff demands judgment on the third cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.

FOURTH CAUSE OF ACTION
(Negligence – Defendant City of New York)

75.     Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs of his ~~First~~ Third Amended Complaint as though fully set forth herein.

76.     Defendant City of New York had an independent duty of care to ensure that its employee, agent and servant performed in accordance with the standard of care usually exercised by professionals under similar conditions and like-surrounding circumstances, including, but not limited to, a duty to ensure that Defendant Nunezramos did not use her status as a city employee to bully, harass and intimidate other people.

18

77.     As more fully described in the preceding paragraphs, Defendant City of New York breached this duty in a variety of ways including (but not limited to): (i) by being careless in the hiring, training, supervising, discipline and control of Defendant Nunezramos whose conduct is complained of herein; (ii) in failing to have in place, policies, procedures, rules and regulations to prevent the type of violent, inappropriate conduct and in failing to terminate it swiftly, and in having policies which encouraged said conduct, and/or in failing to adhere to existing policies, procedures, rules and regulations; (iii) in employing and retaining brutal, dangerous, incompetent and vicious person, whom they knew or should have known was dangerous and a menace to the community, residents and in particular the Plaintiff; and (iv) allowing Defendant Nunezramos to operate with impunity and use her City of New York employment to harass, intimidate, bully and attack others, specifically Plaintiff.

78.     Defendant acted oppressively and maliciously, engaging in conduct with a willful and conscious disregard of Plaintiff's rights and safety.

79.     As a direct and proximate result of Defendant City of New York's conduct, Plaintiff suffered physical injuries, was required to obtain medical treatment for physical and emotional injuries, and was otherwise hurt, injured and damaged.

80.     As a direct and proximate result of Defendant's conduct, Plaintiff received psychiatric medical services and treatment and may need additional treatment in the future.

81.     Defendant's breaches of its independent duty caused Plaintiff harm, both proximately and in-fact, in an amount to be determined at trial.

82.     By reason of the foregoing, Plaintiff demands judgment on the fourth cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.

<u>AS AND FOR A FIFTH CAUSE OF ACTION</u>

19

(Negligence Malicious Prosecution – 42 U.S.C. § 1983 Defendants City of New York and

Nunezramos) Aurora Condominium)

83.    Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs

of his First Third Amended Complaint as though fully set forth herein.

84.    Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs

of his Third Amended Complaint as though fully set forth herein.

85.    Count Five is brought pursuant to 42 U.S.C. § 1983 and the Fourth Amendment of

the U.S. Constitution.

86.    Defendants are "persons" under 42 U.S.C. § 1983 who acted "under the color of

state law" and deprived Plaintiff of rights secured by the U.S. Constitution.

87.    The Fourth Amendment protects "[t]he right of the people to be secure in their

persons . . . against unreasonable…seizures…and no warrants shall issue, but on probable cause .

. . ." U.S. CONST. amend. IV.

88.    A § 1983 claim for malicious prosecution is based upon the Fourth Amendment

right to be free from unreasonable seizures.

89.    As more fully detailed in the preceding paragraphs, on or about February 28, 2020,

the Defendants initiated a criminal proceeding against the Plaintiff by falsely arresting him and

commencing a criminal action in the Criminal Court of the City of New York, Bronx County,

where Plaintiff was charged with violating: (1) P.L. 155.25 (petit larceny); (2) P.L. 165.40

(criminal possession of stolen property); and (3) P.L. 140.10(a) (criminal trespass).

90.    As more fully described in the preceding paragraphs, the criminal action against

Plaintiff was terminated in his favor, whereby in or about January 2021, all of the changes against

Plaintiff were dismissed.

91.     That the said arrest and imprisonment was caused by the Defendants, their agents, servants and employees, without any warrant or other legal process and without authority of the law and without any reasonable cause or belief that the Plaintiff, Sorin Lazar, was in fact guilty of such crimes.

92.     The Plaintiff's arrest and imprisonment were not justified by probable cause or other legal privilege; the Defendants, their agents, servants and employees, acting under the color of statute, ordinances, regulations, customs and usages of the City of New York, and under the authority of their office as police officers for said City, falsely charged the Plaintiff with the Penal Law violations although the Defendants, acting in such capacity, knew that such charges were false.

93.     As detailed more fully in the preceding paragraphs, there were no facts or circumstances that would have lead a reasonable prudent person to believe that Plaintiff was guilty of the crimes at issue because, inter alia, the Defendants failed to consider and/or investigate Plaintiff's evidence and statements that he was simply removing his own personal items from a storage unit that was assigned to him and furthermore more, Defendants failed to establish any elements necessary to charge Plaintiff.

94.     While the Plaintiff was so engaged, as aforesaid, the Defendants, their agents, servants and employees, wrongfully and unlawfully, against the Plaintiff's wish, without probable or reasonable cause, and on the charges of Criminal Possession of Stolen Property, Petit Larceny and Criminal Trespass, then made, that Plaintiff stole certain property, in that he was arrested and imprisoned and with full force of arms, they forcibly and violently seized, assaulted and laid hold of and compelled him to go with the said defendant police officers to then be detained and imprisoned at the NYPD and continuing to other places and times, including, but not limited to a

21

detention cell located at the Bronx County Criminal Court, where the Plaintiff was further detained and imprisoned until such time as he was to be arraigned.

95.     That the Defendants, their agents, servants and employees acting within the scope of their employment, detained and imprisoned the Plaintiff even though the Defendants, their agents, servants and employees, had the opportunity to know or should have known, that the matters hereinbefore alleged, wrongfully, unlawfully and without a sufficient charge having been made against the Plaintiff, directed that the Plaintiff be searched and placed in confinement at said locations.

96.     That the Plaintiff was wholly innocent of the said criminal charges and did not contribute in any way to the conduct of the Defendants, their agents, servants and employees and was forced by the Defendants to submit to the aforesaid arrest and imprisonment thereto entirely against his will.

97.     That as a result of the aforesaid accusations made by the Defendants, their agents, servants and employees acting under their employment and within the scope of their authority, made falsely, publicly, wickedly and maliciously, the Plaintiff was compelled to appear before a Judge of the Bronx County Criminal Court, before being released from confinement.

98.     As detailed more fully in the preceding paragraphs, the actions of Defendants by falsely arresting Plaintiff and maliciously prosecuting him without probable cause amounted to their acting with the requite level of malice.

83.99.  As detailed more fully in the preceding paragraphs, the actions of Defendants also amounted to a post-arraignment seizure.

84.     Defendant Aurora Condominium had an independent duty of care to ensure that its agreements, policies, procedures and rules were performed in accordance with the standard of care

22

usually exercised by professionals under similar conditions and like surrounding circumstances, including, but not limited to, a duty to ensure that its employee (Plaintiff) was protected from the type of conduct, harassment and false statements perpetuated by Defendant Jewels.

85. As more fully described in the preceding paragraphs, Defendant Aurora Condominium was aware that Plaintiff had been permitted to store his personal effects in an assigned storage unit.

86. As more fully described in the preceding paragraphs, Defendant Aurora Condominium breached this duty in a variety of ways including (but not limited to): (i) by being careless in the hiring, training, supervising, discipline and control of its employees, agents and servants who failed to enforce its agreements, policies, procedures and rules to protect the Plaintiff from Defendant Jewels' conduct, harassment and false statements; (ii) in failing to enforce its policies, procedures, rules and regulations to prevent the type of violent, inappropriate conduct and in failing to terminate it swiftly, and in having policies which encouraged said conduct, and/or in failing to adhere to existing policies, procedures, rules and regulations; (iii) in failing to address, confront, prevent and protect Plaintiff from being falsely and wrongfully arrested on account of Defendant Jewels' false police report; (iv) allowing Defendant Jewels to file a false police report when it knew that Plaintiff had been assigned the storage space at issue and was removing his personal effects so he could leave the premises by the end of February 2020; and (v) publishing a newsletter falsely claiming that Plaintiff was a thief.

87. Defendant acted oppressively and maliciously, engaging in conduct with a willful and conscious disregard of Plaintiff's rights and safety.

88. As a direct and proximate result of Defendant Aurora Condominium's conduct, Plaintiff suffered physical injuries, was required to obtain medical treatment for physical and

23

emotional injuries, and was otherwise hurt, injured and damaged. In fact, Defendant Aurora Condominium also retaliated against Plaintiff as a result of his incident by publishing a newsletter falsely claiming that Plaintiff was a thief.

89.    As a direct and proximate result of Defendant's conduct, Plaintiff received psychiatric medical services and treatment and may need additional treatment in the future.

90.    Defendant's breaches of its independent duty caused Plaintiff harm, both proximately and in fact, in an amount to be determined at trial.

91. 100.    By reason of the foregoing, Plaintiff demands judgment on the fifth cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.

<u>AS AND FOR A SIXTH CAUSE OF ACTION</u>
(Negligence Defamation – Defendants Jewels and Aurora Condominium)

101.    Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs of his First Third Amended Complaint as though fully set forth herein.

102.    As detailed more fully in the preceding paragraphs, on or about March of 2020, Defendants Aurora Condominium and Jewels caused to publish a newsletter falsely claiming that Plaintiff was a thief. The newsletter was the March 2020 edition of the "Aurora News", which is a periodic publication sent by the Board to all people living in the building. The editors of the Aurora News are listed on page 1 of the publication as Tonille Hurley and the Aurora Board of Managers. Page 2 of this newsletter lists Defendant Jewels as a member of the Board of Managers. Page 3 of this newsletter states "Building Theft: On Friday evening, 2/28/20, a former employee was observed on surveillance cameras entering a cellar storage closet and removing Aurora property. The police were called and the individual was arrested." This was a false statement of

24

fact, regarding the Plaintiff that was published to third parties, such as the residents of the building, without privilege causing substantial injury and damage to Plaintiff.

103.    The statement in the newsletter about the "former employee" who removed Aurora property and was arrested was of and concerning the Plaintiff because at the time of this incident, Plaintiff was one of only 2 employees that existed.  Therefore, since the other individual was still employed at the time of this incident, it was thus known by the people who lived in the building and who read the newsletter that Plaintiff was the "former employee".

104.    Defendants' publication of this statement and wrongdoing was intentional, egregious and malicious, evinced a high degree of moral turpitude and demonstrated wanton and willful dishonesty and was negligent as Defendants knew (or should have known) that this statement was false because these defendants knew (or should have known) that the storage unit at issue was assigned to Plaintiff and that at the time of the incident Plaintiff was simply clearing out this storage unit (as he was instructed by Defendants to do) and was not stealing any property.

92. 105.     Defendants statement was defamatory *per se* by accusing Plaintiff of criminal activity, committing crimes and dishonesty in his business, trade, and profession.

93.    Defendant Jewels (as a member of the condominium board) had an independent duty of care to ensure that the board's agreements, policies, procedures and rules were performed in accordance with the standard of care usually exercised by professionals under similar conditions and like surrounding circumstances, including, but not limited to, a duty to ensure that an employee (Plaintiff) would not be subject to harassment, false statements, false accusations and filing of false police reports.

25

94.   ~~As more fully described in the preceding paragraphs, Defendants Aurora Condominium and Jewels were aware that Plaintiff had been permitted to store his personal effects in an assigned storage unit.~~

95.   ~~As more fully described in the preceding paragraphs, Defendant Jewels breached this duty in a variety of ways including (but not limited to): (i) falsely accusing Plaintiff of stealing property at the Aurora Condominium; (ii) publishing a newsletter falsely claiming that Plaintiff was a thief; (iii) making false statements to the NYPD in connection with Plaintiff's unlawful arrest; and (iv) filing a false police report with the NYPD.~~

96.   ~~Defendant acted oppressively and maliciously, engaging in conduct with a willful and conscious disregard of Plaintiff's rights and safety.~~

97.   ~~As a direct and proximate result of Defendant Jewels' conduct, Plaintiff suffered physical injuries, was required to obtain medical treatment for physical and emotional injuries, and was otherwise hurt, injured and damaged.  In fact, Defendant Jewels also retaliated against Plaintiff as a result of his incident by publishing a newsletter falsely claiming that Plaintiff was a thief.~~

98.   ~~As a direct and proximate result of Defendant's conduct, Plaintiff received psychiatric medical services and treatment and may need additional treatment in the future.~~

99.   ~~Defendant's breaches of its independent duty caused Plaintiff harm, both proximately and in fact, in an amount to be determined at trial.~~

~~100.~~106.     By reason of the foregoing, Plaintiff demands judgment on the sixth cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.

<u>AS AND FOR A SEVENTH CAUSE OF ACTION</u>

(~~Negligent Infliction of Emotional Distress~~<u>Abuse of Process</u> – ~~All~~ Defendants <u>Jewels and Aurora Condominium</u>)

26

107.    Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs of his ~~First~~ Third Amended Complaint as though fully set forth herein.

108.    As detailed more fully in the preceding paragraphs, Defendants Jewels and Aurora Condominium regularly issued process against Plaintiff by filing criminal charges against him.

109.    As detailed more fully in the preceding paragraphs, these Defendants filed criminal charges against Plaintiff and falsely accused him of various crimes with the intent to do harm without any excuse or justification as these Defendants were aware that Plaintiff was simply removing his own personal effects from a storage space that was assigned to him, and despite said awareness elected to file false criminal charges against him.

110.    As detailed more fully in the preceding paragraphs, these Defendants used the process in a perverted manner to obtain a collateral objective, which was to have Plaintiff evicted from his apartment and for all his personal effects to be removed from his assigned storage unit by the end of February 2020.

~~101.~~111.       By reason of the foregoing, Plaintiff demands judgment on the seventh cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.

~~102.    Defendant City of New York had an independent duty of care to ensure that its employee, agent and servant performs in accordance with the standard of care usually exercised by professionals under similar conditions and like surrounding circumstances, including, but not limited to, a duty to ensure that Defendant Nunezramos did not use her status as a city employee to bully, harass and intimidate other people.~~

103. ~~Defendant Nunezramos had an independent duty of care to perform in accordance with the standard of care usually exercised by individuals and/or professionals under similar conditions and like surrounding circumstances.~~

104. ~~Defendant Aurora Condominium had an independent duty of care to ensure that its agreements, policies, procedures and rules were performed in accordance with the standard of care usually exercised by professionals under similar conditions and like-surrounding circumstances, including, but not limited to, a duty to ensure that Plaintiff (and all employees) were protected from the type of conduct, harassment and false statements perpetuated by Defendant Jewels.~~

105. ~~Defendant Jewels had an independent duty of care to perform in accordance with the standard of care usually exercised by individuals and/or professionals under similar conditions and like-surrounding circumstances.~~

106. ~~As more fully described in the preceding paragraphs, Defendant City of New York breached this duty in a variety of ways including (but not limited to): (i) by being careless in the hiring, training, supervising, discipline and control of Defendant Nunezramos whose conduct is complained of herein; (ii) in failing to have in place, policies, procedures, rules and regulations to prevent the type of violent, inappropriate conduct and in failing to terminate it swiftly, and in having policies which encouraged said conduct, and/or in failing to adhere to existing policies, procedures, rules and regulations; (iii) in employing and retaining brutal, dangerous, incompetent and vicious person, whom they knew or should have known was dangerous and a menace to the community, residents and in particular the Plaintiff; and (iv) allowing Defendant Nunezramos to operate with impunity and use her City of New York employment to harass, intimidate, bully and attack others, specifically Plaintiff.~~

107.   As more fully described in the preceding paragraphs, Defendant Nunezramos breached this duty in a variety of ways including (but not limited to): (i) aggressively and violently falsely arresting Plaintiff; (ii) falsely accusing Plaintiff of stealing property at the Aurora Condominium; and (iii) acting in an unprofessional manner by, *inter alia*, failing to properly investigate the incident at issue leading to Plaintiff's false arrest at the Aurora Condominium.

108.   As more fully described in the preceding paragraphs, Defendant Aurora Condominium breached this duty in a variety of ways including (but not limited to): (i) by being careless in the hiring, training, supervising, discipline and control of its employees, agents and servants who failed to enforce its agreements, policies, procedures and rules to protect the Plaintiff from Defendant Jewels' conduct, harassment and intimidation; (ii) in failing to enforce its policies, procedures, rules and regulations to prevent the type of violent, inappropriate conduct and in failing to terminate it swiftly, and in having policies which encouraged said conduct, and/or in failing to adhere to existing policies, procedures, rules and regulations; (iii) in failing to address, confront, prevent and protect Plaintiff from being falsely and wrongfully arrested on account of Defendant Jewels' false police report; (iv) allowing Defendant Jewels to file a false police report when it knew that Plaintiff had been assigned the storage space at issue and was removing his personal effects so he could leave the premises by the end of February 2020; and (v) publishing a newsletter falsely claiming that Plaintiff was a thief.

109.   As more fully described in the preceding paragraphs, Defendant Jewels breached this duty in a variety of ways including (but not limited to): (i) falsely accusing Plaintiff of stealing property at the Aurora Condominium; (ii) publishing a newsletter falsely claiming that Plaintiff was a thief; (iii) making false statements to the NYPD in connection with Plaintiff's unlawful arrest; and (iv) filing a false police report with the NYPD.

110.    Defendants acted oppressively and maliciously, engaging in conduct with a willful and conscious disregard of Plaintiff's rights and safety.

111.    As detailed more fully in the preceding paragraphs, Plaintiff suffered an emotional injury from Defendants' breach of duty which unreasonably endangered his own physical safety due to the fact that he was subjected to an unlawful arrest for crimes he did not commit.

112.    As detailed more fully in the preceding paragraphs, there exists here a special likelihood of genuine and serious mental distress arising from the fact that Plaintiff was unlawfully arrested and detained for crimes he did not commit and was the victim of an unlawful scheme to deprive him of his rights.

113.    Defendants engaged in conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights.

114.    As a direct and proximate result of Defendants' conduct Plaintiff suffered emotional harm including, but not limited to, fright, shock and extreme mental anguish and had to be placed under the care of a physician.  Plaintiff remains in a highly nervous state and state of anxiety after the occurrence of the incident described in this complaint.  Therefore, Plaintiff's mental injuries and emotional harm were a direct result of Defendants' conduct and breach of their duty of care.  Plaintiff received psychiatric medical services and treatment and may need additional treatment in the future.

115.    Defendants' breaches of their independent duty caused Plaintiff harm, both proximately and in-fact, in an amount to be determined at trial.

116.    By reason of the foregoing, Plaintiff demands judgment on the seventh cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.

AS AND FOR AN EIGHTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress—Defendant Aurora Condominium)

117.    Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs of his First Amended Complaint as though fully set forth herein.

118.    The conduct, actions and acts of Defendant Aurora Condominium against Plaintiff, as described herein, were intentional, extreme and outrageous.  Defendant Aurora Condominium's intention is evident from the fact that it, *inter alia*, (i) allowed Defendant Jewels to file a false police report when it knew that Plaintiff had been assigned the storage space at issue and was removing his personal effects so he could leave the premises by the end of February 2020; and (ii) published a newsletter falsely claiming that Plaintiff was a thief.

119.    The conduct of Defendant Aurora Condominium and treatment of Plaintiff by, *inter alia*, (i) allowing Defendant Jewels to file a false police report when it knew that Plaintiff had been assigned the storage space at issue and was removing his personal effects so he could leave the premises by the end of February 2020; and (ii) publishing a newsletter falsely claiming that Plaintiff was a thief was extreme and outrageous.  This conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

120.    Defendant Aurora Condominium acted intentionally and/or recklessly and in deliberate disregard of a high probability that emotional distress would follow.  The conduct of the Defendant, individually and cumulatively, directly and immediately caused Plaintiff damages in the form of severe emotional distress, needing psychiatric medical services and treatment, leaving him both with injuries and psychological impairment.  Plaintiff's injuries include fear for his well-being, and severe anxiety.  The damage caused by the Defendant Aurora Condominium's conduct is so severe that no reasonable person should be expected to endure it.

121.   As a direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered damages.

122.   By reason of the foregoing, Plaintiff demands judgment on the eighth cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.

AS AND FOR AN NINTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress – Defendant Jewels)

123.   Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs of his First Amended Complaint as though fully set forth herein.

124.   The conduct, actions and acts of Defendant Jewels against Plaintiff, as described herein, was intentional, extreme and outrageous.  Defendant Jewels' intention is evident from the fact that he, *inter alia*, (i) falsely accused Plaintiff of stealing property at the Aurora Condominium; (ii) published a newsletter falsely claiming that Plaintiff was a thief; and (iii) made false statements to the NYPD and (iv) filed a false police report in connection with Plaintiff's unlawful arrest.

125.   The conduct of Defendant Jewels and treatment of Plaintiff by, *inter alia*, (i) falsely accusing Plaintiff of stealing property at the Aurora Condominium; (ii) publishing a newsletter falsely claiming that Plaintiff was a thief; and (iii) making false statements to the NYPD and (iv) filing a false police report in connection with Plaintiff's unlawful arrest was extreme and outrageous.  This conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

126.   Defendant Jewels acted intentionally and/or recklessly and in deliberate disregard of a high probability that emotional distress would follow.  The conduct of the Defendant, individually and cumulatively, directly and immediately caused Plaintiff damages in the form of severe emotional distress, needing psychiatric medical services and treatment, leaving him both

32

~~with injuries and psychological impairment.   Plaintiff's injuries include fear for his well-being, and severe anxiety.   The damage caused by the Defendant Jewels' conduct is so severe that no reasonable person should be expected to endure it.~~

~~127.    As a direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered damages.~~

~~128.    By reason of the foregoing, Plaintiff demands judgment on the ninth cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.~~

WHEREFORE, Plaintiff demands:

a) On the first cause of action, awarding damages in favor of Plaintiff and against Defendants, jointly and severally, in an amount to be determined at trial, together with legal fees, applicable interest and costs;

b) On the second cause of action, awarding judgment in favor of Plaintiff and against the Defendant Jasmine Nunezramos in an amount to be determined at trial, together with legal fees, applicable interest and costs;

c) On the third cause of action, awarding judgment in favor of Plaintiff and against the Defendant Jasmine Nunezramos in an amount to be determined at trial, together with legal fees, applicable interest and costs;

d) On the fourth cause of action, awarding judgment in favor of Plaintiff and against the Defendant City of New York in an amount to be determined at trial, together with legal fees, applicable interest and costs;

e) On the fifth cause of action, awarding judgment in favor of Plaintiff and against the

33

Defendant City of New York and Jasmine Nunezramos Aurora Condominium jointly and severally, in an amount to be determined at trial, together with legal fees, applicable interest and costs;

f)  On the sixth cause of action, awarding judgment in favor of Plaintiff and against the Defendants Cyris Jewels and Aurora Condominium jointly and severally, in an amount to be determined at trial, together with legal fees, applicable interest and costs;

g)  On the seventh cause of action, awarding damages in favor of Plaintiff and against Defendants, Cyris Jewels and Aurora Condominium, jointly and severally, in an amount to be determined at trial, together with legal fees, applicable interest and costs;

h)  On the eighth cause of action, awarding judgment in favor of Plaintiff and against the Defendant Aurora Condominium in an amount to be determined at trial, together with legal fees, applicable interest and costs;

i)h)On the ninth cause of action, awarding judgment in favor of Plaintiff and against the Defendant Cyris Jewels in an amount to be determined at trial, together with legal fees, applicable interest and costs;

j)i) For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

k)j)For punitive damages in an amount to be proven at trial;

l)k)An award of legal fees, applicable interest and costs;

m)l)   Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action and claims to which she has a right to jury trial.

Dated:  White Plains, New York
        ~~September 30~~August 17, ~~2021~~2022

                              Respectfully submitted,
                              THE LAW OFFICE OF
                              RICHARD ST. PAUL, ESQ., PLLC
                              Attorneys for Plaintiff Sorin Lazar

                              By:_____
                                    Richard St. Paul, Esq. (RS 6388)
                                    445 Hamilton Avenue, Suite 1102
                                    White Plains, New York 10601
                                    (914) 517-7568